## <u>DECLARATION OF AARON KLEIN</u>

I, Aaron Klein, Special Agent with Homeland Security Investigations ("HSI"), do hereby declare:

### I.      <u>Introduction and Agent Background</u>

1.       I am a Special Agent with HSI and have been employed in this capacity since September 2008.  From 2009 to 2013, I was assigned to the Document and Benefit Fraud Task Force in Baltimore, Maryland, where I investigated a variety of criminal organizations engaged in various fraud schemes.  From 2013 to present, I have focused on money laundering, asset forfeiture, and contraband smuggling organizations.  I have received instruction and training, along with investigative experience, in narcotics trafficking, financial institution fraud, immigration fraud, mail fraud, identity theft, and money laundering.  In the course of conducting or participating in criminal investigations, I have been involved in interviewing and debriefing witnesses and informants; conducting physical surveillance; analyzing bank records and other financial documents; analyzing telephone records; collecting and analyzing evidence; and preparing and executing search warrants, including search warrants for e-mail accounts.  In January of 2020, I was designated as the Cultural Property investigator for cases within the HSI field office in Baltimore, Maryland.   Since then, I have been involved in numerous investigations involving the importation of cultural property.  I have worked with other HSI agents, U.S. Customs and Border Protection ("CBP") officers, and cultural property scholars to identify, detain, and seize artifacts that were imported into the United States contrary to law and/or bi-lateral agreements with other countries.  I have conducted interviews with importers and conducted reviews of provenance and importation records pertaining to the importation of cultural property.  I have received training from the Smithsonian Institute and other educational institutions on cultural property

investigations and reviewed literature regarding the history and methods involving looting antiquities, art theft, and the importation of cultural heritage objects into the United States. If called upon, I can testify to the facts set forth in this declaration.

## II.    Purpose of This Declaration

2.      This declaration is submitted in support of a complaint for forfeiture *in rem* of fourteen ancient Egyptian antiquities. The fourteen items have been identified as:

   a.   Old Kingdom Limestone Funerary Statue of Seated Elite, seized on or about August 24, 2020, at Anchorage, Alaska;

   b.   Ancient Egyptian Faience Amulet of the Goddess Hatmehyt from Egypt's Late Period (664-332 BCE), seized on or about September 29, 2020, at John F. Kennedy Airport in New York;

   c.   Egyptian wooden canopic jar cover from the New Kingdom Period, 19th Dynasty or later 1300 BCE, seized on or about November 17, 2020, at John F. Kennedy Airport in New York;

   d.   Cypriot Spindle Ware Vessel (New Kingdom Period 1549 to 1075 BCE), seized on or about November 17, 2020, at John F. Kennedy Airport in New York;

   e.   Painted limestone Shabti from ancient Egypt's New Kingdom period (1549 to 1075 BCE), seized on or about November 17, 2020, at John F. Kennedy Airport in New York;

   f.   Painted limestone phallic figurine from ancient Egypt's Late Period to Ptolemaic Period (664-30 BCE), seized on or about November 17, 2020, at John F. Kennedy Airport in New York;

   g.   Painted limestone Egyptian Shabti from ancient Egypt's New Kingdom period (1549 to 1075 BCE), seized on or about November 18, 2020, at John F. Kennedy Airport in New York;

   h.   Egyptian Calcite/Alabaster Shabti (1190-1075 BCE), seized on or about November 18, 2020, at John F. Kennedy Airport in New York;

   i.   Painted limestone Egyptian Bed Figurine (New Kingdom Period 1549-1075 BCE), seized on or about November 18, 2020, at John F. Kennedy Airport in New York;

   j.   Egyptian Glazed Phallic Figurine from Egypt's Late Period to Ptolemaic Period (664-30 BCE), seized on or about November 18, 2020, at John F. Kennedy Airport in New York;

     k.   Faience Shabti Figurine (Late Period to Ptolemaic Period 664-30 BCE), seized on or about November 18, 2020, at John F. Kennedy Airport in New York;

     l.   Pre-Dynastic Vase (3500-3200 BCE), seized on or about November 18, 2020, at John F. Kennedy Airport in New York;

     m.   Egyptian limestone lug-handled jar, Early Dynastic Period, c. 3000-2600 BCE, seized on or about April 7, 2021, at John F. Kennedy Airport in New York; and

     n.   Egyptian painted wooden Ushabti box, Third Intermediate Period to Late Period, c. 1075-332 BCE, seized on or about April 7, 2021, at John F. Kennedy Airport in New York

(collectively, the "Defendant Properties").

3.     I submit that there are sufficient facts to support a reasonable belief that the Defendant Properties constitute merchandise introduced into the United States in violation of 18 U.S.C. § 545 (smuggling goods into the United States), and thus are subject to forfeiture pursuant to 18 U.S.C. § 545, and/or constitute merchandise which is introduced or attempted to be introduced into the United States contrary to law, in violation of 19 U.S.C. § 1595a (aiding unlawful importation), and thus are subject to forfeiture pursuant to 19 U.S.C. § 1595a(c).

### III.   <u>Summary of the Investigation</u>

#### A.  Individuals and Entities

4.     HSI and CBP are investigating an international network of antiquities looters and smugglers who are trafficking looted Egyptian antiquities from countries including Thailand into the United States and Europe for sale on the antiquities market.  In some cases, the antiquities are being sold on web-based platforms by persons working with the smugglers.

5.     Fada Trading Co. Ltd. ("Fada Trading") is a shipping company located in Bangkok, Thailand.  According to Thai authorities, Javed Ahmed, a Pakistani national living in Thailand, is a member of the board of directors and the second largest shareholder of Fada Trading.

6.     Nazieh Barakat ("Barakat") is a Canadian national who resides in Hamilton, Ontario, Canada and operates an art gallery.

7.     Asia Pacific (HK) Ltd. is a Hong Kong-based shipping company.

8.     Sylvia Ivette Barrera ("Barrera") is a Mexican national currently living in San Antonio, Texas.  Barrera has sold antiquities using an eBay user ID of CENTURYART.

9.     Century Arts Co. Ltd. is a Thailand-based shipping company.

10.    Mark Ragan ("Ragan") is a U.S. national who resides in Edgewater, Maryland. Ragan has purchased antiquities from Barrera using an eBay user ID "3501kenr."

**B.  Fada Trading's July 2020 Attempted Shipment to Canada**

11.    On or about July 15, 2020, CBP stopped and inspected a shipment sent via FedEx from Fada Trading in Bangkok, Thailand addressed to Barakat in Hamilton, Ontario, Canada.  The parcel transited through Anchorage, Alaska, where it was subject to CBP inspection.  A FedEx airway bill attached to the shipment included an invoice dated July 11, 2020, from Fada Trading that described the contents of the shipment as "[a] stone garden sculpture for home garden" and listed a price of $1,200.

12.    Upon inspection, CBP officers found the stone statue of a seated male figure pictured below (and described above in paragraph 2a):



13.     On or about July 20, 2020, a historian of ancient Egyptian art (the "Historian") examined photographs of the statue and concluded that the statue was authentic and dated to the Egyptian Old Kingdom, Dynasty IV or V.  The historian explained to CBP that the statue is typical of those found at archaeological sites Saqqara and Giza, which are royal cemeteries near the ancient capital of Memphis, located in present-day Egypt.

14.     Investigators obtained still shots from a video sent from an antiquities smuggler in Dubai to an antiquities smuggler in Germany in 2012 and intercepted by foreign law enforcement. The still shots (pictured below) appear to depict the same statue CBP seized in Anchorage and pictured above, indicating the statue CBP seized in Anchorage had been traded on the black market:



15.     On August 3, 2020, a certified appraiser estimated that the fair market value of the statue was $6 million.

16.     On July 29, 2020, Barakat sent an email to CBP in response to an inquiry from CBP regarding the statue.  The email contained a document entitled "Confirmation" dated July 28, 2020, and an invoice dated June 10, 2020.  Both documents, pictured below, were written on letterhead from another company—Asia Pacific (HK) Company—not Fada Trading.  Neither of these documents was contained in the original shipment containing the statue.

 

17.     The "Confirmation," which describes the statue as a replica (specifically, a "replicate"), is inconsistent with the Historian's view that the statue is a genuine Old Kingdom sculpture.  The invoice is also inconsistent with the certified appraiser's determination of the value of the statue, as the value listed—2500 Hong Kong dollars—was equal to approximately $322.57 U.S. dollars as of the date of the invoice (June 10, 2020) according to an online currency converter.

18.     On July 31, 2020, Barakat responded to additional questions a CBP officer sent to him via email regarding the statue.  Barakat stated he purchased the statue from Fada Trading and that the statue was made by Asia Pacific (HK) Ltd.  Barakat attached the following copy of a receipt to his email:



The receipt, dated July 11, 2020, is made out to Barakat and is stamped with a seal for Fada Trading.  The shipping cost listed on the receipt ($1,600) exceeded the cost of the statue listed on the receipt ($1,200).  The receipt describes the statue as "[a] stone garden statue for home garden."

19.    Barakat also told CBP that a contact for Asia Pacific (HK) Ltd. was a "Mr[.] [S]am" and provided the telephone number +852 9534 3893.

20.    Records obtained by search warrant for a Google account used by Barakat reveal that in June of 2020, Barakat engaged in a series of e-mail communications with a Canadian antiquities dealer regarding hieroglyphic translation services.   It should be noted that in March of 2019, Barakat sent images of an unrelated statue to the dealer and asked for the dealer's opinion. The dealer responded: "Although quite convincing, it is not ancient," to which Barakat thanked

the dealer for the opinion.  In an e-mail dated June 9, 2020, Barakat sent three images for analysis. The pictures depict the hieroglyphic on the back of the seated statue detained in Anchorage, Alaska on July 15, 2020.  During an exchange regarding estimates for the translation service, the dealer wrote: "… the object appears to be ancient."  Barakat responds: "Yes the piece is ancient."  In a subsequent exchange, Barakat wrote: "…so the statue is for Tjenti correct? I knew it from the old kingdom from the style of graving but i wanted to be sure who is the seated figure."  The dealer responds: "Yes, that's correct. Pretty impressive!"  In a later e-mail, the dealer states: "I sent you a link to a facebook page. It appears that the statue group is in the Berlin museum."  Based on these exchanges, I believe the Barakat was fully aware that he was importing an ancient artifact and not just a garden statue as labeled on the invoice.  This awareness is further highlighted when the dealer suggests that the piece is part of a collection belonging to a museum in Germany and bolstered by the fact that Barakat has a history of accepting the dealer's opinion on an item's ancient authenticity.  Below is one of the photographs that Bakarat sent for analysis followed by a photograph taken by CBP during detention.





21.     FedEx records show that Barakat received four other shipments from Fada Trading or individuals affiliated with Fada Trading in 2019.  Shipping documents for these shipments described the contents as "22 pieces small glass pot, jar and bowls"; "small coloured glass plates, bowls, and pottery"; and copper and ceramic bowls and plates.  I understand that shippers often use vague descriptions like these when attempting to smuggle antiquities.

22.     The investigation determined that Barakat has previously sold antiquities.  For example, on or about November 24, 2014, Barakat held an auction on the website Liveauctioneers.com and offered Egyptian antiquities for sale.  Additionally, on or about November 29, 2017, Barakat's art gallery in Ontario issued an invoice to "Archaeological Center Ltd." for various items with similar description as the shipping documents described above, such as "Ancient Glass," "Ancient Pottery," "Ancient Stone," and "Ancient Bronze."  Archaeological

Center Ltd. is an ancient art gallery in Jaffa, Israel that also appears on Asia Pacific (HK) Ltd. invoices uncovered in the investigation.

**C. Century Arts Co. Ltd.'s Shipments to Edgewater, Maryland**

23.     In July 2020, law enforcement identified a Royal Mail parcel in transit from the United Kingdom to Mark RAGAN, an antiquities collector in Maryland.  The shipment was addressed to Ken Ragan at his residence in Edgewater, Maryland and was described as "Antique Pottery Pendant."  Ken is Ragan's middle name, and I note that Ragan uses the eBay user ID "3501kenr."

24.     The shipment contained a suspected smuggled antiquity, specifically the amulet described in paragraph 2b above.  CBP and the Federal Bureau of Investigation (who were part of the investigation prior to HSI) contacted Ragan on July 16, 2020 in reference to the shipment and informed him of the requirements to import cultural artifacts into the United States.  Law enforcement subsequently detained the parcel, and after an in-person examination, an associate curator at a U.S. museum ("U.S. Curator") identified it as an Egyptian faience amulet of the goddess Hatmehyt from the ancient city of Mendes.

25.     Between July 30, 2020, and September 23, 2020, at least seven shipments were sent from CENTURY ARTS CO. LTD. in Thailand to Ragan in Edgewater, Maryland.  The parcels were sent by DHL and were in transit through Cincinnati, Ohio, where they were subject to CBP inspection and appeared to contain antiquities.  The shipments contained several of the items that comprise the Defendant Properties, specifically the items described in Paragraphs 2c, 2d, 2e, 2f, 2g, 2h, 2i, 2j, 2k, and 2l.  These items were subsequently transferred to CBP in New York for additional analysis.

26.     The U.S. Curator physically examined the items contained in the shipments and determined that they were genuine Egyptian antiquities.  None of the shipments contained any paperwork identifying the items as antiquities or describing the provenance or origins of the antiquities.  The paperwork attached to the shipments described the contents as, *inter alia*, "decoration vase," "small head," "decoration ston e [sic] doll," or "decoration doll."  As stated above, I know that shippers often use vague descriptions like these when attempting to smuggle antiquities.

27.     During an interview in late September 2020, Ragan told an FBI agent he had purchased the majority of the antiquities from Barrera, an eBay seller using the eBay user ID CENTURYART, located in San Antonio, Texas.  Following this interview with Ragan, investigators visited CENTURYART's eBay page, which stated that items would ship from San Antonio.  Ragan could not explain why the shipments came from Thailand.

28.     One of the shipments to Ragan, which CBP inspected on or about September 21, 2020, contained a handwritten yellow sticky note with "IVETTE _13018469696" as pictured below.  Ivette is Barrera's middle name.  During the September 2020 interview, Ragan informed the FBI agent that he communicated with Barrera using telephone number (310) 846-9696.[1]

---

[1] Telephone number (301) 846-9696 returns to a business based in Maryland.  That telephone number is not associated with BARRERA and it is believed the transposition of "301" instead of "310" was a scrivener's error made by the person who wrote the yellow sticky note.



29.     Information obtained through legal process identified telephone number (310) 846-9696 as a number assigned by Pinger to a subscriber of that service.  Information obtained from Pinger shows that the number was assigned by Pinger on April 6, 2020, to someone using the email address ivetteb1230@gmail.com.   Google subscriber information for ivetteb1230@gmail.com lists the subscriber as "Ivette Barrera" and the recovery SMS phone number as (210) 895-9585. Records obtained from T-Mobile confirm that Barrera is the subscriber on (210) 895-9585 phone number.

30.     On or about September 22, 2020, CBP examined a shipment from Century Arts Co. Ltd. to Ragan containing an ushabti, the item described in Paragraph 2k, and a terracotta vessel, the item described in Paragraph 2l, along with a note (pictured below) that reads, in part: "I packed one small ushabti free for you…"   An ushabti is an Egyptian funerary figure.  The note also included Barrera's telephone number: (310) 846-9696.

Hello dear buyer thanks a lot for buying our items and showing interest for further items

Enclosed pls find the terra cotta Vasc .

I packed one small ushabti free for you and hope we will be having communication on my wat's app

+13108469696 thanks again for your cooperation

31.     A curator at a British museum ("British Curator") examined photographs of the ushabti in the September 22, 2020, shipment and concluded that it is a "demonstrably recent loot" that can be linked to ongoing illicit digging at two identifiable archaeological sites in Egypt.  The British Curator noted that the ushabti is linked to another intercepted parcel containing a group of matching ushabti figures that had been sent from Thailand to Britain earlier in the year.

32.     The FBI conducted another interview of Ragan in October 2020.  During the October 2020 interview, Ragan told the FBI agent that he received photographs of other antiquities from Barrera that she was offering for sale.  Those antiquities were not listed for sale on the CENTURYART eBay page.

33.     Ragan also said that Barrera told Ragan she had moved to the United States from Thailand, and that she still had a house in Thailand where she kept some of her antiquities collection.  Barrera told Ragan that she inherited all of the antiquities from her grandfather in his will.  On October 20, 2020, Barrera sent Ragan a one-page excerpt of the purported will via email.

34.      Ragan provided Barrera with contact information for an FBI agent who was working on the investigation and asked Barrera to contact the agent to discuss the September 22, 2020 shipment.  On October 20, 2020, Barrera left the agent a voicemail and sent him a text

message from the telephone number (830) 290-7418.  Information obtained through legal process confirmed Barrera was the subscriber of this phone number.  The text message included three pages of a purported will.  On October 20, 2020, Barrera sent Ragan a one-page excerpt of the purported will via email.  The document Barrera sent Ragan was one of the pages of the purported will Barrera sent to an FBI agent the day before.

35.    The document purports to be a will for Ahmed Abdullah.  In it, Barrera is identified as "Zayna Abdullah AKA Sylvia Ivette Barrera" and is purportedly the recipient of a specific bequest of a "Full Egyptian/Eastern Family Heirloom."



**DISPOSITION OF ESTATE**

**Specific Bequests**

10.    To receive a specific bequest under this Will a beneficiary must survive me for thirty (30) days. Any item that fails to pass to a beneficiary will return to my estate to be included in the residue of my estate. All property given under this Will is subject to any encumbrances or liens attached to the property. My specific bequests are as follows:

a.    I leave to Zayna Abdullah AKA Sylvia Ivette Barrera of San Antonio Texas, Texas, if they shall survive me, for their own use absolutely, the following: Full Egyptian/Eastern Family Heirloom.

36.    The purported will also contained the following "Wipeout Provision" stating that all remaining residue of the estate should go "to Ahmed Javed of Bangkok, Thailand for their own use absolutely, if they are alive."

a.      All of the residue of my estate to Zayna Abdullah AKA Sylvia Ivette Barrera of San
        Antonio Texas, Texas, for their own use absolutely.

**Wipeout Provision**
Should I leave no children, child, grandchildren or grandchild surviving me, or should they all
die before becoming entitled to receive the whole of their share of my estate, then I direct my
Executor to divide any remaining residue of my estate into one hundred (100) equal shares and
to pay and transfer such shares as follows:

a.      100 shares to Ahmed Javed of Bangkok, Thailand for their own use absolutely, if they are
        alive.

TAMENTARY TRUST
Testamentary Trust For Minor Beneficiaries

37.     On October 22, 2020, an investigator talked with Barrera by telephone at the telephone number (830) 290-7418.  Barrera confirmed she was the owner of CENTURYART.

38.     During the telephone call, Barrera said the will was written on March 2, 1950 by or on behalf of her grandfather.  Law enforcement subsequently confirmed that Barrera was not born until 1978—approximately 28 years after the purported bequest.  Barrera said Zayna Abdullah was the name her grandfather used for her, but it was not her legal name.

39.     Law enforcement asked Barrera for the attestation and signature pages for the will. She said she would have to locate them and would email them to investigators.  Investigators never received those pages from Barrera.

40.     During the telephone conversation, Barrera told the FBI agent her father had inherited an antiquities collection from Barrera's grandfather, which Barrera had in turn inherited from her father.  This contradicts the language in the will, in which her grandfather purportedly bequeathed the antiquities collection directly to Barrera, not her father.

41.     When asked about Ahmed Javed—the individual named in the wipeout provision of the purported will—Barrera said he was her husband.

42.     Ahmed Javed is a transposition of Javed Ahmed, managing director of Fada Trading, the company that shipped the Egyptian statue to Barakat.  When asked for her husband's date of birth, Barrera said it was July 5, 1973.  According to Thai authorities, this is also Javed Ahmed's date of birth.

43.     Barrera told the FBI agent she was born in Austin, Texas and frequently traveled between the United States and Thailand.  She said her husband continued to reside in Thailand with their five children, where he ran their jewelry business.

44.     A review of CBP databases confirmed that Barrera was born in Mexico in 1978. Barrera is a Mexican citizen holding a lawful permanent resident card issued by the United States. I have been unable to find any United States passport information for Barrera.  There is also no record of Barrera ever traveling from the United States to Thailand or from Thailand to the United States.  In fact, the only record of Barrera traveling outside the United States was in February and March of 2024 when she traveled to Qatar under a Mexican passport in the name Silvia Ivette Martinez Gutierrez.

45.     Records obtained from Harris County, Texas, indicate that Silvia Ivette Martinez-Gutierrez married on September 10, 2013.  She then changed her last name to her husband's last name, Barrera. In April of 2024, CBP identified an unrelated shipment destined for Barrera (using an alias) at a residence in San Antonio, Texas.  This is the same address listed on Barrera's flight reservation to Qatar.  A commercial database reveals that Mr. Barrera was associated with this address in May of 2023.

46.     During the October 22, 2020, conversation, the FBI agent asked Barrera if she would be selling any more antiquities.  Barrera said she would not.  She also said she was not going to be receiving any more antiquities.

47.     However, shortly before the FBI's telephone call with Barrera, CBP identified a shipment coming from Asia Pacific (HK) Company in Thailand to CENTURYART at Barrera's home address in Texas.  CBP inspected the shipment in Anchorage, Alaska on or about October 23, 2020.  These items were subsequently transferred to CBP in New York for additional analysis. The shipment contained two Egyptian antiquities, the shabti box (a box in which ushabtis were kept) and vessel pictured below.





48.     Paperwork included with the shipment identified the contents as "home decor." The shipment also contained an invoice from Asia Pacific (HK) Company addressed to Barrera at her home address.  The invoice notes the shipment is from Sam Sheikh and includes a phone number, 95343893, and an address in Hong Kong.  I note that Sam Sheikh has the same first name and phone number as the contact for Asia Pacific (HK) Ltd. that Barakat provided to CBP—"Mr. Sam" with telephone number +852 9534 3893[2]—as discussed in paragraph 19 above.

49.     The U.S. Curator examined photographs of the shabti box and believed it was from the Third Intermediate Period-Late Period.  The U.S. Curator further referenced a box that was in the collection of the Walters Art Museum in Baltimore, Maryland noting that the "decoration and painting style of these two boxes are identical and were likely created by the same artist or in the same workshop."  An image of the parallel box is below.

---

[2] The dialing code/country code for Hong Kong is +852 for international calls.



50.     The U.S. Curator stated the vessel was typical in size and shape to vessels created during the Predynastic Period and referenced a parallel vessel in the Museum of Fine Arts Boston collection.  An image of the parallel vessel is below.



51.     Below is a table summarizing the intercepted shipments that contained the

Defendant Properties:

| Arrival Date/ Shipping ID | Shipper's Desc. | Complaint Identifier and Expert's Description | Sender & Recipient |
|---|---|---|---|
| 7/15/2020<br><br>FedEx<br>8103 7635 6511 | decoration | (a) Old Kingdom Limestone Funerary Statue of Seated Elite | Fada Trading<br>&<br>Barakat |
| 7/31/2020<br><br>Royal Mail<br>RN702915252GB | Antique pottery pendant | (b) Ancient Egyptian Faience Amulet of the Goddess Hatmehyt from Egypt's Late Period (664-332 BCE) | [Illegible]<br>&<br>Ragan |
| 9/17/2020<br><br>DHL<br>6911167476 | small head | (c) Egyptian wooden canopic jar cover from the New Kingdom Period, 19th Dynasty or later 1300 BCE | Century Arts Thailand<br>&<br>Ragan |
| 9/17/2020<br><br>DHL<br>6911253974 | decoration vase | (d) Cypriot Spindle Ware Vessel (New Kingdom Period 1549 to 1075 BCE) | Century Arts Thailand<br>&<br>Ragan |
| 9/22/2020<br><br>DHL<br>2072461786 | decoration ston e [sic] doll | (e) painted limestone Shabti from ancient Egypt's New Kingdom period (1549 to 1075 BCE) | Century Arts Thailand<br>&<br>Ragan |
| 9/21/2020<br><br>DHL<br>2345511545 | decoration vase | (f) painted limestone phallic figurine from ancient Egypt's Late Period to Ptolemaic Period (664-30 BCE) | Century Arts Thailand<br>&<br>Ragan |
| 9/22/2020<br><br>DHL<br>8447461536 | decoration ston e [sic] doll | (g) painted limestone Egyptian Shabti from ancient Egypt's New Kingdom period (1549 to 1075 BCE)<br><br>(h) Egyptian Calcite/Alabaster Shabti (1190-1075 BCE)<br><br>(i) painted limestone Egyptian Bed Figurine (New Kingdom Period 1549-1075 BCE) | Century Arts Thailand<br>&<br>Ragan |
| 9/22/2020<br><br>DHL<br>1137888264 | decoration doll | (j) Egyptian Glazed Phallic Figurine from Egypt's Late Period to Ptolemaic Period (664-30 BCE) | Century Arts Thailand<br>&<br>Ragan |

| 9/22/2020 DHL 1137892755 | decoration vase and doll | (k) Faience Shabti Figurine (Late Period to Ptolemaic Period 664-30 BCE) (l) Pre-Dynastic Vase (3500-3200 BCE) | Century Arts Thailand & Ragan |
| 10/22/2020 FedEx 8135 1419 6490 0402 | Home decor | (m) Egyptian limestone lug-handled jar, Early Dynastic Period, c. 3000-2600 BCE (n) Egyptian painted wooden Ushabti box, Third Intermediate Period to Late Period, c. 1075-332 BCE | Asia Pacific (HK) & CENTURYART [Barrera] |

## Conclusion

52.     The evidence in this declaration provides probable cause to believe, and I do believe, that the Defendant Properties constitute merchandise introduced into the United States in violation of 18 U.S.C. § 545 (smuggling goods into the United States), and thus are subject to forfeiture pursuant to 18 U.S.C. § 545, and/or constitute merchandise which is introduced or attempted to be introduced into the United States contrary to law, in violation of 19 U.S.C. § 1595a (aiding unlawful importation) and thus subject to forfeiture pursuant to 19 U.S.C. § 1595a(c).  I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 31st day of July, 2024.

AARON M KLEIN
Digitally signed by AARON M KLEIN
Date: 2024.07.31 11:19:49 -04'00'

Aaron Klein
Special Agent
Homeland Security Investigations